UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBERT ONEAL BEAN,                :
                                  :
    Plaintiff,                   :    Civil Action No.:    17-0140 (RC)
                                  :
    v.                           :    Re Document No.:     16
                                  :
SONNY PERDUE, Secretary,          :
United States Department of Agriculture,[1] :
                                  :
    Defendant.                   :

# MEMORANDUM OPINION

GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

## I. INTRODUCTION

This matter is before the Court on Defendant's motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Robert Oneal Bean brought this action against the Secretary of the United States Department of Agriculture ("USDA") because the USDA denied him loan servicing and decided to foreclose on land that Mr. Bean had purchased. Mr. Bean claims that these acts violated the Administrative Procedure Act ("APA"), Pub. L. 79-404, § 706, 60 Stat. 237 (codified at 5 U.S.C. § 500 *et seq.*), the Agricultural, Rural Development, Food and Drug Administration and Related Agencies Appropriations Act, 1999, Pub. L. 105–277, § 741, 112 Stat. 2681 (codified at 7 U.S.C. § 2279)) ("1999 Agricultural Appropriations Act"), "and/or the Food, Conservation and Energy Act of 2008," Pub. L. 110–234, § 14011, 122 Stat. 923 ("2008 Farm Bill"). *See* Am. Compl. at

---

[1] Pursuant to the Federal Rules of Civil Procedure 25(d), Sonny Perdue, the current Secretary of the United States Department of Agriculture, is automatically substituted as the defendant in this matter.

5–6, ECF No. 3. For the reasons stated below, the Court grants in part and denies in part Defendant's Motion to Dismiss.

## II. FACTUAL BACKGROUND[2]

Robert Oneal Bean, an African American farmer from Mississippi, borrowed approximately $50,000 from the Farm Service Agency ("FSA") to purchase a 120-acre tract of farm land in 2001. Am. Compl. at 3, ECF No. 3. Mr. Bean made timely payments to FSA until 2011, when he was diagnosed with prostate cancer. Am. Compl. at 4. Thereafter, Mr. Bean fell behind in his payments. *See id.* Later that year, an FSA Loan Officer accelerated Mr. Bean's loan and demanded that Mr. Bean pay the full balance to avoid foreclosure. *See* Am. Compl. at 4. In response, Mr. Bean submitted medical records demonstrating that he had cancer, hoping that the FSA would allow him the opportunity to recover. *See id.*

Mr. Bean alleges that in the Fall of 2016, the FSA Loan Officer advised Mr. Bean that the FSA could divide his land and sell a sufficient amount to satisfy the $40,000 that Mr. Bean still owed to the FSA. *See* Am. Compl. at 4. On December 15, 2016, during a visit to an FSA Office, Mr. Bean asked the FSA Loan Officer whether he could apply to reschedule his outstanding debt. *See* Am. Compl. at 4–5. The FSA Loan Officer replied that Mr. Bean had forfeited that opportunity for loan servicing because Mr. Bean had not completed the necessary application in a timely manner (sixty days from the receipt of the application materials). *See* Am. Compl. at 5. Mr. Bean alleges that he was not aware of any application and, in any event, he could not have submitted any such application due to his prostate cancer. *See id.* Mr. Bean does not affirmatively allege that he did not receive a loan servicing application. Rather, he

---

[2] At the motion to dismiss stage, the Court accepts Plaintiff's factual allegations as true. *See e.g.*, *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 67 (D.C. Cir. 2015).

alleges that he "does not recall" receiving an application, either in person or through the mail. *Id.*

On January 23, 2017, Mr. Bean filed this action claiming that the USDA acted in an arbitrary and capricious manner in violation of the APA, and discriminated against him on the basis of his disability in violation of the 1999 Agricultural Appropriations Act, and the 2008 Farm Bill.

### III. LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *See, e.g., United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556

U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of the legal conclusions that are couched as factual allegations. *See Twombly*, 550 U.S. at 555.

## IV. ANALYSIS

### A. *Pigford v. Glickman* Consent Decree and the 2008 Farm Bill

Much of Mr. Bean's Amended Complaint and briefing is devoted to his assertion that he is a claimant under *Pigford v. Glickman,* 185 F.R.D. 82 (D.D.C. 1999) ("*Pigford*") and that he is entitled to relief pursuant to the consent decree entered in that case. *See* Am. Compl. at 1–3; Pl.'s Opp'n Mot. Dismiss ("Opp'n") at 2–4, 5–6, ECF No. 18. Defendant argues that Mr. Bean's status as a *Pigford* claimant is irrelevant. *See* Def.'s Mot. Dismiss ("MTD") at 6–7, ECF No. 16. The Court agrees and finds that *Pigford* is inapposite to the validity of Mr. Bean's claims.

*Pigford* was a class action lawsuit filed on behalf of African-American farmers in 1997. *See Pigford*, 185 F.R.D. at 89. Plaintiffs in that case alleged that the USDA violated the Equal Credit and Opportunities Act ("ECOA") when it discriminated against African-American farmers with respect to its administration of its federal farm credit and benefit programs. *See id.* at 87. The *Pigford* plaintiffs further alleged that the USDA violated the APA when it failed to properly investigate and respond to complaints from 1981 through 1996. *See id*. at 98, 105. In that case, the court certified a class, which it defined as:

> All African American farmers who (1) farmed, or attempted to farm, between January 1, 1981 and December 31, 1996; (2) applied to the United States Department of Agriculture (USDA) during that time period for participation in a federal farm credit or benefit program and who believed that they were discriminated against on the basis of race in USDA's response to that application; and (3) filed a discrimination complaint on or before July 1, 1997, regarding USDA's treatment of such farm credit or benefit application.

185 F.R.D. at 92.

On April 14, 1999, the court in *Pigford* entered a consent decree that settled plaintiffs' claims. *See* 185 F.R.D. at 112. The consent decree instructed class members to file their claims under a two-track system. *See* 185 F.R.D. at 95. Under Track A, "class members with little or no documentary evidence" were entitled to "a virtually automatic cash payment of $50,000, and forgiveness of debt owed to the USDA." *Id.* Under Track B, class members were given the chance to "prove their cases with documentary or other evidence by a preponderance of the evidence [with] . . . no cap on the amount they may recover." *Id.* Class members seeking relief under the consent decree were required to submit their claims packages on or before October 12, 1999. Consent Decree ¶ 5(c), *Pigford*, 185 F.R.D. 82 (D.D.C. 1999) (No. 97-cv-1978) ("Consent Decree"). A late claim could only proceed after an arbitrator determined that the claimant's "failure to submit a timely claim was due to extraordinary circumstances beyond his control." Consent Decree ¶ 5(g). By December 31, 2010, over one billion dollars had been awarded to approximately 16,000 successful claimants in the form of direct payments, loan forgiveness, and tax relief. *See In re Black Farmers Discrimination Litig.*, 856 F. Supp. 2d 1, 11 (D.D.C. 2011). More than 58,000 individuals, though, were denied leave to submit late claim packages. *See id.*

In 2008, after extensive hearings, Congress resurrected the late *Pigford* claims in the Food, Conservation, and Energy Act of 2008 ("2008 Farm Bill"). *Id.* Under this Act, "[a]ny *Pigford* claimant who ha[d] not previously obtained a determination on the merits of a *Pigford* claim [could], in a civil action brought in the United States District Court for the District of Columbia, obtain that determination." Pub. L. 110-234, §14012(b), 122 Stat. 923, 1448 (2008). Civil suits brought pursuant to this legislation were later consolidated in *In re Black Farmers Discrimination Litigation* ("*Pigford II*"), 856 F. Supp. 2d 1 (D.D.C. 2011). *See* 856 F. Supp. 2d

5

at 16. On October 27, 2011, the litigants in that suit also reached a settlement. *See id.* at 42. Under the terms of that agreement, members of the class had until May 11, 2012 to submit their claims. *See* 856 F. Supp. 2d at 23.

In his Amended Complaint, Mr. Bean claims that he is entitled to relief under the 2008 Farm Bill and alleges that the "issue raised in this action has its origin in [*Pigford*]." Am. Compl. at 2. But even a cursory review of Mr. Bean's Amended Complaint demonstrates that there is no such nexus between the facts that Mr. Bean alleges today and the claims that were remedied in *Pigford*. To start, a *Pigford* claim depends entirely on a relationship with the USDA occurring between 1981 and 1996.[3] However, Mr. Bean alleges that he did not borrow money from the USDA to purchase the land at issue until 2001. *See* Am. Compl. at 3–5. Furthermore, unlike *Pigford*, Mr. Bean attempts to allege that the USDA discriminated against him, not because of his race, but because of his disability. *See* Am. Compl. at 5, 6. Thus, Mr. Bean has not alleged any facts from which this Court could reasonably conclude that he is entitled to relief under the *Pigford* consent decree, which concerned racial discrimination against African-American farmers in the 1980's and 90's. As a result, Mr. Bean has failed to allege any facts demonstrating that he may be entitled to relief as a *Pigford* claimant.

### B. The 1999 Agricultural Appropriations Act

Although Mr. Bean also claims that he is entitled to relief under § 741 of the 1999 Agricultural Appropriations Act, *see* Am. Compl. at 6, he misunderstands that provision.

---

[3] Mr. Bean could be a *Pigford* claimant, if he (1) farmed on a tract of land during the period between 1981 and 1996, (2) applied to the USDA to participate in a federal farm credit or benefit program during that time and was discriminated against on the basis of race, and (3) filed a discrimination complaint to the USDA "on or before July 1, 1997." *Pigford*, 185 F.R.D. at 92. If that is the case, he could be entitled to relief for those claims as a late claimant if he had submitted his claim by May 11, 2012. *Pigford II* at 23. Mr. Bean, however, makes none of these allegations in his Complaint. *See generally* Am. Compl.

Section 741 does not create a private right of action and it alone cannot form the basis for Mr. Bean's claims. *See* Pub. L. 105–277, § 741, 112 Stat. 2681. Despite this error, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346 (2014) (per curiam) (holding that former police officers suing the city for violation of due process right in their terminations need not expressly invoke 42 U.S.C. § 1983, a provision creating such a right of action in their complaint); *see also Greer v. Bd. of Trs. of Univ. of D.C.*, 113 F. Supp. 3d 297, 305 (D.D.C. 2015) (assessing the plaintiff's claims under the ADEA in a motion to dismiss "despite Plaintiff's failure to, twice, include a citation to that statute in his complaint"). Thus, the Court will endeavor to discern the legal theory that Mr. Bean is attempting to assert based on his Complaint and other filings.

Based on his filings, the Court concludes that there are three possible legal theories that Mr. Bean may be attempting to aver here: the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 *et seq.*, and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.* Mr. Bean alleges in his Amended Complaint that § 741 "incorporates provisions of the [ADA]." Am. Compl. at 6. In actuality, § 741 does not incorporate the ADA, but instead waives the statute of limitations for certain claims brought under the ECOA. *See* Pub. L. 105-277, § 741. In his opposition to Defendant's motion, Mr. Bean makes arguments concerning both the ADA and the ECOA. *See* Pl.'s Opp'n at 2–5. Because it is unclear which legal theory Mr. Bean is advancing in his Amended Complaint, the Court will consider both the ADA and the ECOA. In addition, the Court will consider the Rehabilitation Act, which is sufficiently similar to the ADA to

warrant consideration. However, for the reasons stated below, the Court finds that Mr. Bean has not stated a claim under any of these statutes.

1. ADA

To the extent that Plaintiff seeks relief under the ADA, that claim must fail. *See* Am. Compl. at 6. Defendant argues that the USDA is an agency within the executive branch and thus not covered by the ADA. *See* MTD at 6, ECF No. 16; Defendant's Reply to Opp'n Mot. Dismiss ("Reply") at 3, ECF No. 20. Mr. Bean responds that the ADA is only unavailable to federal employees. *See* Opp'n at 4–5, ECF No. 18. Therefore, he argues that, because he is not a federal employee, his action is not barred. *See id*. Mr. Bean's argument is without merit.

The ADA is a civil rights law that prohibits discrimination against individuals with disabilities in several areas of life including, employment, state and local government services, public accommodations, and telecommunications. *See generally* 42 U.S.C. ch. 126. However, the ADA does not cover the federal government in any of these areas. The "employer" under Title I of the ADA "does not include [] the United States," thus barring claims by federal employees. 42 U.S.C. § 12111(5)(B). Title II of the ADA prohibits discrimination of qualified individuals due to their disabilities in "the services, programs, or activities of a public entity." 42 U.S.C. § 12132. Yet, "public entity" is defined to cover only: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority." 42 U.S.C. § 12131. Thus, the federal government and its agencies are not covered. A claim for relief under Title III of the ADA is also not viable as it prohibits discrimination by "public accommodations," but only applies to enumerated types of private entities. *See* 42 U.S.C. § 12181–82. Thus, to the extent that Mr. Bean is attempting to bring suit

under the ADA, his claim must fail because the federal government is not amenable to suit under that statute.

2. Rehabilitation Act

Mr. Bean's claims fare no better under the Rehabilitation Act. While the Rehabilitation Act prohibits discrimination on the basis of disabilities under any "program or activity" conducted by any federal agencies, 29 U.S.C. § 794(a),[4] Mr. Bean has failed to state a claim. The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, *solely by reason of her or his disability* . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) (emphasis added). Critically, a plaintiff seeking relief under section 504 of the Rehabilitation Act "must show that he or she was discriminated against *solely by reason of his [or her] handicap*." *R.S. v. District of Columbia*, 292 F. Supp. 2d 23, 27 (D.D.C. 2003) (emphasis added) (quoting *Walker v. District of Columbia*, 969 F.Supp. 794, 797 (D.D.C.1997)). Here, although Mr. Bean recites the word "discrimination" in his Amended Complaint, he has not alleged any acts of discrimination nor stated any facts suggesting that the USDA's denial of his request for loan servicing was due "solely"—or even partly—to his disability. Indeed, Plaintiff himself alleges that the FSA denied his request for loan servicing because the 60-day application period had expired. *See* Am. Compl. at 5. Accordingly, Mr. Bean has not alleged facts showing that he is entitled to relief under the Rehabilitation Act.

---

[4] Defendant had adequate notice of a legal theory based on the Rehabilitation Act as they have addressed it in their motion to dismiss. *See* MTD at 6.

### 3. ECOA

Finally, considering Mr. Bean's Amended Complaint as a claim under the ECOA, the Court finds that Mr. Bean has failed to state a plausible claim for relief. The ECOA prohibits creditors from discriminating against any applicant "on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. §1691(a)(1). Mr. Bean, however, states no facts in his Amended Complaint from which to infer that the USDA discriminated against him based on any of those protected classes. *Hildebrandt v. Vilsack*, 102 F. Supp. 3d 318, 325–26 (D.D.C. 2015) ("To succeed on their ECOA claims, the [plaintiffs] must demonstrate not only that the FSA denied at least one request for a loan application or loan servicing, but also that any such denials were made on the basis of the [plaintiffs'] race."). Thus, the Court finds that Mr. Bean has failed to state a claim under the ECOA.

\* \* \*

Consequently, the Court finds that Mr. Bean has failed to state a claim under any of the statutes that could reasonably have been implicated by his supposed claim under § 741 of the 1999 Appropriations Act.

### C. APA

While Mr. Bean's other claims necessarily fail, the Court is satisfied that he has adequately plead factual matters sufficient to support a claim under the APA. Under the APA, an agency decision should be upheld unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). "[T]he ultimate standard of review is a narrow one. The court

is not empowered to substitute its judgment for that of the agency." *Id*. As the Supreme Court has instructed, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotations omitted); *accord Holy Land Found. for Relief & Dev. v. Ashcroft* ("*Holy Land I*"), 219 F. Supp. 2d 57, 67 (D.D.C. 2002), *aff'd*, 333 F.3d 156 (D.C. Cir. 2003) ("the Court must review the administrative record assembled by the agency to determine whether its decision was supported by a rational basis").

The arbitrary-and-capricious standard of review is "very deferential." *Rural Cellular Ass'n v. FCC*, 588 F.3d 1095, 1105 (D.C. Cir. 2009). Therefore, the court will generally defer to the wisdom of the agency as long as the action is supported by "reasoned decisionmaking." *Fox v. Clinton*, 684 F.3d 67, 75 (D.C. Cir. 2012); *see also Am. Paper Inst., Inc. v. Am. Elec. Power Serv. Corp.*, 461 U.S. 402, 422 (1983) (explaining that the agency's decision need not be "the only reasonable one, or even ... the result [the Court] would have reached") (quoting *Unemployment Comp. Comm'n v. Aragon*, 329 U.S. 143, 153 (1946)). "Moreover, the party challenging an agency's action as arbitrary and capricious bears the burden of proof." *San Luis Obispo Mothers for Peace v. U.S. Nuclear Reg. Comm'n*, 789 F.2d 26, 37 (D.C. Cir. 1986) (en banc).

In this case, Defendant argues that, in denying Mr. Bean's request for loan servicing, it was merely following the regulations that it had promulgated on this subject. *See* MTD at 6–7. Loan servicing for loan programs administered by the FSA is governed by 7 C.F.R. § 766. When a borrower's delinquency or financial distress is the result of reduced ability to pay due to circumstances beyond the borrower's control, including illness or injury of a borrower who

11

operates the farm, a borrower may be considered for loan servicing under certain conditions.[5]
See 7 C.F.R. § 766.104(a). The agency will send loan servicing information via certified mail to
any borrower that is "90 days or more past due on loan payments" or to any borrower who
"request[s] this information."[6] 7 C.F.R. § 766.101. However, if a borrower who has received a
loan servicing application form "fails to timely respond or does not submit a complete
application within [a] 60–day timeframe," the Agency will notify the borrower of the agency's
intent to accelerate the loan and the borrower's right to request reconsideration. 7 C.F.R. §
766.103(b). If the borrower does not apply for loan servicing, the agency will then accelerate the
borrowers' account. 7 C.F.R. § 766.351(b)(1).

If the USDA can demonstrate that it was adhering to the relevant statutes and regulations
concerning loan servicing when it denied Mr. Bean, then its decision was neither arbitrary nor
capricious. For example, the Ninth Circuit considered a case very similar to the one at bar in
*Grinstead v. United States*, 122 F.3d 1071 (9th Cir. 1997) (unpublished). In that case, the
plaintiff argued that he should have been exempt from foreclosure for so long as he remained
disabled and that the Farmers Home Administration ("FmHA") "acted arbitrarily and
capriciously" when it "decid[ed] to foreclose on his property without offering any further
extensions of time or restructuring options with regard to his farm loans." *Id.* at *1. The Ninth
Circuit disagreed. It observed that, under the relevant statute, "[i]f the borrower can service a
restructured loan with a present value that is greater than or equal to the liquidation recovery

---

[5] Some of the conditions are (i) the borrower does not have non-essential assets the net value of which is sufficient to pay the delinquent portion of the loan and (ii) the borrower has acted in good faith. *See* 7 C.F.R. § 766.104.

[6] If certified mail is not accepted, the notice will be sent by first class mail to the borrower's last known address. *See* 7 C.F.R. § 766.101.

value of FmHA's collateral, FmHA must restructure the loan, thereby allowing the borrower to continue his farming operation." *Id.* at *2 (citing 7 U.S.C. § 2001(c)(5)). Although the plaintiff had applied for loan servicing, the FmHA had determined "that even with loan servicing; after paying all operating expenses, taxes, scheduled payments on all debts and family living expenses, [plaintiff] would have had an available balance of negative $6,048." *Id.* Therefore, regardless of the plaintiff's disability, the Ninth Circuit held that the "FmHA did not act arbitrarily or capriciously when it decided not to offer [plaintiff] any further extensions of time or restructuring options with regard to his outstanding FmHA loans." *Id*. Moreover, other courts in different contexts have likewise found that administrative decisions made in accordance with statutes and regulations are not arbitrary and capricious. *See e.g.*, *Makey Deli Grocery Inc. v. United States*, 873 F. Supp. 2d 516, 524 (S.D.N.Y. 2012) (holding that agency action "was neither arbitrary nor capricious" when agency "adhered to its own regulations"); *Young Jin Choi v. United States*, 944 F. Supp. 323, 325 (S.D.N.Y. 1996) ("A sanction is not arbitrary and capricious when a federal agency properly adheres to its own regulations and guidelines when imposing it.") (citing *Lawrence v. United States,* 693 F.2d 274, 276 (2d Cir. 1982)).

Here, Mr. Bean alleges that when he requested loan servicing, he was denied "because [he] did not complete the loan servicing application in a timely [manner] ([s]ixty [d]ays)." Am. Compl. at 5. This, of course, is consistent with the USDA's regulations that require borrowers to submit timely applications in order to be considered for loan servicing. *See* 7 C.F.R. §§ 766.101(d), 766.103(b). However, this 60-day time frame begins to run from the date the borrower *receives* the application materials. *See id* at § 766.101(d). Mr. Bean alleges that he "was not aware of … the Loan Servicing materials" and "does not recall any such receipt [of these materials] either in person or via mail." Am. Compl. at 5. Although Mr. Bean does not

affirmatively allege that he did not receive application materials, *see generally* Am. Compl., the Court is obliged to construe his Complaint liberally and grant him "the benefit of all inferences that can be derived from the facts alleged," *Kowal v. MCI Comms. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Doing so, the Court believes that Mr. Bean's allegations are sufficient to give rise to a reasonable inference that he did not receive the relevant loan servicing application materials. If true, then denying him loan servicing for failure to submit a timely application would not be in accordance with the USDA's regulations and may very well have been arbitrary and capricious. *See e.g.*, *Ingram Barge Co. v. United States*, 884 F.2d 1400, 1405 (D.C. Cir.1989) ( "Thus, even if the [agency] had made and then breached a promise to depart from its own regulation, its departure—not its return to the established course—would be arbitrary and capricious."); *Fuller v. Winter*, 538 F. Supp. 2d 179, 186 (D.D.C. 2008) ("It is a fundamental principle of administrative law that an agency is bound to adhere to its own regulations" and "failure to do so can lead to arbitrary and capricious decision-making in violation of the APA.") Thus, the Court finds that the factual material in Mr. Bean's Complaint sufficiently supports his claim under the APA and accordingly denies Defendant's Motion to Dismiss with regard to that claim. Of course, the government is free to demonstrate its compliance with its regulations upon summary judgment after submission of the applicable administrative record.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the case under Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted in part and denied in part. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: September 11, 2017                             RUDOLPH CONTRERAS
                                                               United States District Judge