# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| ROBERT O. BEAN, | : | | |
|---|---|---|---|
| Plaintiff, | : | Civil Action No.: | 17-0140 (RC) |
| v. | : | Re Document No.: | 26 |
| SONNY PERDUE, Secretary, United States Department of Agriculture, | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This action involves a dispute over the standards an agency must meet when mailing notices to regulated individuals. Plaintiff Robert Oneal Bean sued Sonny Perdue, the Secretary of the United States Department of Agriculture ("USDA"), claiming that USDA violated the Administrative Procedure Act ("APA") by failing to notify him of certain key information related to his USDA loan. More specifically, Mr. Bean alleges that he did not receive a letter that summarized USDA's decision not to reconsider accelerating his loan, and that explained his rights to mediation and appeal of that decision.

USDA has moved for summary judgment, asserting that it was not required by any regulation to send the letter at issue, and that regardless of the governing regulations, the record shows that the letter was sent. Although the Court finds that USDA regulations and internal handbook procedures required USDA to send the letter at issue, Mr. Bean has failed to raise a genuine dispute of material fact as to whether it complied with those regulations and procedures. Accordingly, for the reasons stated below, the Court grants Defendant's motion.

## II. BACKGROUND

### A. Regulatory Framework

The Farm Service Agency ("FSA") is an entity, housed within USDA, which administers loan programs for family-operated farms and ranches, among other activities. FSA, *Farm Loan Programs*, https://www.fsa.usda.gov/programs-and-services/farm-loan-programs/index (last visited June 15, 2018). FSA is governed by Title 7, Chapter VII of the Code of Federal Regulations. *See generally* 7 C.F.R. §§ 700–799.

This case involves USDA's administration of "Primary Loan Servicing" for FSA farm loans, which is regulated by 7 C.F.R. § 766. *See* FSA, *Your FSA Farm Loan Compass*, 39–44 (2017), https://www.fsa.usda.gov/programs-and-services/farm-loan-programs/farm-loan-servicing/index. Primary Loan Servicing provides more lenient loan terms to a borrower who is financially distressed or delinquent on his or her FSA loans, provided that the distress or delinquency is due to circumstances beyond the borrower's control, including illness or injury. *See* 7 C.F.R. §§ 766.101, 104(a). A borrower may be considered for loan servicing only under certain conditions.[1] *See* § 766.104(a). Under its regulatory scheme, USDA will send loan servicing information via certified mail to any borrower who is "90 days or more past due on loan payments," or to any borrower who "[r]equest[s] this information."[2] 7 C.F.R. §§ 766.101(b), app. A ("FSA-2510"), 766.101(c); Def.'s Mot. Summ. J. ("Def.'s Mot.") Ex. 1, ECF No. 27-2. However, if a borrower who has received a loan servicing application form "fails to timely respond or does not submit a complete application within [a] 60–day timeframe," USDA

---

[1] Among other conditions, (i) the borrower must not have non-essential assets, the net value of which are sufficient to pay the delinquent portion of the loan; and (ii) the borrower must have acted in good faith. 7 C.F.R. §§ 766.104(a)(2), (a)(4).

[2] If certified mail is not accepted, the notice will be sent by first class mail to the borrower's last known address. 7 C.F.R. § 766.101(c).

will notify the borrower by certified mail of its intent to accelerate the loan, and of the borrower's right to request reconsideration, mediation, or appeal of that decision.[3]  7 C.F.R. § 766.103(b); *see* Def.'s Mot. Ex. 3 ("FSA-2525").  Once all requests for reconsideration and administrative appeals are concluded, USDA will then accelerate the borrower's loan.  *See* 7 C.F.R. § 766.351(b)(1); 7 C.F.R. § 766.355.

USDA's regulatory framework provides certain procedural protections for borrowers, including notice requirements and the opportunity to request mediation or informal review of certain USDA determinations.  *See, e.g.*, 7 C.F.R. §§ 766.101(b), 766.103(b)(2), 780.  For instance, Section 766, Subpart C, which addresses Primary Loan Servicing programs, includes three appended forms titled "Notice of Availability of Loan Servicing" ("Section 766 Notices"), stating that "[i]f [a reconsideration] meeting does not change the Agency decision, *you will be notified* and provided 30 days to request mediation, negotiation, or appeal."  7 C.F.R. § 766, subpt. C, apps. A–C(h) (emphasis added).  Similarly, form FSA-2525, notifying a borrower of USDA's intent to accelerate the borrower's loans, informs the borrower of a right to reconsideration and states that "[i]f the reconsideration meeting does not change the Agency decision, you will be notified and provided 30 days to request mediation, or appeal as outlined."  Def.'s Mot. Ex. 3.  And 7 C.F.R. § 780 provides the process for appeal or reconsideration of adverse USDA decisions.  It states that following the disposition of a reconsideration request, "[t]he official decision on reconsideration will be the decision letter that is *issued*."  7 C.F.R. § 780.7(f) (emphasis added).  Section 780 also provides that "[t]o the extent practicable, no later than 10 business days after an agency decision maker renders an adverse decision that affects

---

[3] "Loan acceleration" means that USDA requires the borrower to immediately repay the entire balance of the borrower's loans.  *See* 7 C.F.R. § 766.355.

a participant, FSA will provide the participant written notice of the adverse decision and available appeal rights." 7 C.F.R. § 780.15(a).

USDA further specifies procedures for borrowers' reconsideration requests in its internal handbook on farm loan servicing ("5-FLP Handbook"). *See* FSA, *5-FLP, Direct Loan Servicing: Special and Inventory Property Management* (2014), www.fsa.usda.gov/internet/FSA_file/5-flp.pdf. Paragraph 231 of the 5-FLP Handbook states that "[t]he authorized agency official will send the borrower a letter stating the results of the reconsideration meeting . . . If FSA's decision has not changed, the borrower will be provided with new mediation and appeal rights." The 5-FLP Handbook procedures coincide with the USDA regulations, listed above, requiring the agency to notify borrowers in writing of the results of their reconsideration requests, and of their rights to mediation and appeal. *See* 7 C.F.R. §§ 766, 780.7(f), 780.15(a).

### B. Mr. Bean's Loan History

Mr. Bean, a farmer from Mississippi, borrowed $50,000 from USDA in early 2001 to purchase farm land. Declaration of Michael Palmer ("Palmer Decl.") ¶ 2, ECF No. 27-1; Def.'s Statement of Material Facts Not in Dispute ("Def.'s SUMF") ¶ 1, ECF No. 26-1. Mr. Bean made timely payments to USDA until 2011, when he began to fall behind on the loan. *See* Palmer Decl. ¶ 3. He was never able to catch back up. *Id.*

Beginning in the spring of 2014, USDA sent Mr. Bean a series of certified mailings related to his flagging loan payments. *Id.* ¶ 4. Mr. Bean does not contest receipt of those mailings, save one. Pl.'s Opp'n Def.'s Mot. ("Pl.'s Opp'n") at 4–5, ECF No. 30. On April 17, 2014, Michael Palmer, a USDA Farm Loan Officer, sent Mr. Bean a loan servicing application, form FSA-2510. Palmer Decl. ¶ 4; Def.'s Mot. Ex. 1 ("FSA-2510"). As explained above, this

application contained information on loan servicing options, and it explained that Mr. Bean must apply for loan servicing within 60 days of receiving the application or else risk loan acceleration. Def.'s Mot. Ex. 1 ("FSA-2510"); Def.'s Mot. at 3, ECF No. 26-2. On May 19, 2014, Officer Palmer sent Mr. Bean, by First Class regular mail, form FSA-2516, titled "30 Day Reminder of the Notice of Availability of Loan Servicing" ("30 Day Reminder"). Palmer Decl. ¶ 5; *see* Def.'s Mot. Ex. 2 ("FSA-2516"), ECF No. 27-2. On June 18, 2014, having received no response from Mr. Bean within the 60 day period mandated by form FSA-2510, Officer Palmer sent Mr. Bean form FSA-2525, titled "Intent to Accelerate." Palmer Decl. ¶ 6; *see* Def.'s Mot. Ex. 3 ("FSA-2525"). This form notified Mr. Bean of USDA's decision to accelerate his loan, and it demanded that he pay the full loan balance to avoid foreclosure, or that he pursue reconsideration, mediation, or appeal. *See* Def.'s Mot. Ex. 3 ("FSA-2525"). On June 23, 2014, Mr. Bean requested reconsideration of USDA's decision to accelerate his loan. *See* Palmer Decl. ¶ 7; Def.'s Mot. Ex. 4 ("FSA-2526"), ECF No. 27-2; Pl.'s Opp'n at 2.

On June 26, 2014, Officer Palmer and Mr. Bean met to discuss Mr. Bean's request for reconsideration. Palmer Decl. ¶ 8; Pl.'s Opp'n at 2. Based on that meeting, Officer Palmer determined that Mr. Bean failed to provide evidence that the Intent to Accelerate notice was sent in error, and therefore declined to halt the loan acceleration. Palmer Decl. ¶ 8; *see* Def.'s Mot. Ex. 5, ECF No. 27-2. On June 27, 2014, Officer Palmer sent Mr. Bean "Notice of the Farm Service Agency's Response to Plaintiff's Request for Reconsideration" ("Response Letter"), affirming USDA's previous decision to accelerate his loan and noting that Mr. Bean had 30 days to request mediation or appeal the determination. *See* Def.'s Mot. Ex. 5. Officer Palmer initially sent the letter by certified mail, but it was returned unclaimed on July 17, 2014, so he immediately re-sent it via First Class regular mail. Palmer Decl. ¶ 9; *see* Def.'s Mot. Ex. 5. Mr.

5

Bean claims that he never received this First Class mailing. Decl. of Robert Bean ("Bean Decl.") ¶ 3, ECF No. 30-2; Pl.'s Statement of Material Facts in Dispute ("Pl.'s SMF") ¶ 5, ECF No. 30-1. On August 4, 2015, FSA's District Director sent Mr. Bean "Notice of Acceleration of Your Debt to the United States Department of Agriculture and Demand for Payment of that Debt," which reiterated the agency's final decision to accelerate Mr. Bean's loan. Palmer Decl. ¶ 10; *see* Def.'s Mot. Ex. 6, ECF No. 27-2.

### C. Procedural History

In January 2017, Mr. Bean filed suit in this Court alleging, among other claims, that he "[did] not recall . . . receipt either in person or via mail [of] an application for 'Loan Servicing,'" which he contends constituted arbitrary and capricious action by USDA under the APA. Am. Compl. at 5, ECF No. 3. In a prior Memorandum Opinion, this Court granted USDA's motion to dismiss all claims except the APA claim. *See generally Bean v. Perdue*, No. 17-140, 2017 WL 4005603 (D.D.C. Sept. 11, 2017). USDA now moves for summary judgment on that claim.

### III. ANALYSIS

### A. Legal Standards

#### 1. Summary Judgment

In a typical case, a court may grant summary judgment to a movant who "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016). But when assessing a motion for summary judgment in an APA case, "the district judge sits as an appellate tribunal," *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001), limited to determining whether, as a matter of law, the evidence in the administrative record supports the agency's decision. *Citizens for Responsibility & Ethics in*

*Wash. v. SEC*, 916 F. Supp. 2d 141, 145 (D.D.C. 2013). In such cases, the complaint "actually presents no factual allegations, but rather only arguments about the legal conclusion to be drawn about the agency action." *Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993). Accordingly, the Court's review "is based on the agency record and limited to determining whether the agency acted arbitrarily or capriciously." *Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009). "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Citizens for Responsibility & Ethics in Wash.*, 916 F. Supp. 2d at 145 (citing *Richards v. INS*, 554 F.2d 1173, 1177 n.28 (D.C. Cir. 1977)).

## 2. Administrative Procedure Act

Under the APA, an agency decision should be upheld unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). As the Supreme Court has instructed, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotations omitted); *accord Holy Land Found. for Relief & Dev. v. Ashcroft* ("*Holy Land I*"), 219 F. Supp. 2d 57, 67 (D.D.C. 2002), *aff'd*, 333 F.3d 156 (D.C. Cir. 2003) ("[T]he Court must review the administrative record assembled by the agency to determine whether its decision was supported by a rational basis"). "To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).

The arbitrary and capricious standard of review is "very deferential." *Rural Cellular Ass'n v. FCC*, 588 F.3d 1095, 1105 (D.C. Cir. 2009). Therefore, the court will generally defer to the wisdom of the agency as long as the action is supported by "reasoned decisionmaking." *Fox v. Clinton*, 684 F.3d 67, 75 (D.C. Cir. 2012); *see also Am. Paper Inst., Inc. v. Am. Elec. Power Serv. Corp.*, 461 U.S. 402, 422 (1983) (explaining that the agency's decision need not be "the only reasonable one, or even . . . the result [the Court] would have reached.") (quoting *Unemp't Comp. Comm'n v. Aragon*, 329 U.S. 143, 153 (1946)). "[T]he party challenging an agency's action as arbitrary and capricious bears the burden of proof." *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*, 789 F.2d 26, 37 (D.C. Cir. 1986) (en banc).

### B. Merits

Mr. Bean claims that USDA violated the APA by failing to adhere to its own regulations and procedures, which he contends required USDA to send him the Response Letter containing the results of his reconsideration meeting with Officer Palmer, and providing notice of his additional rights to mediation and appeal to the Department of Agriculture National Appeal Division. *See* Pl.'s Opp'n at 4–5. USDA argues that it was not required by regulation to send such a letter, that it otherwise complied with all applicable regulations and procedures, and that it therefore did not violate the APA. Def.'s Reply Pl.'s Opp'n ("Def.'s Reply") at 2, ECF No. 31. USDA also argues that, regardless of the regulatory requirements, it sent Mr. Bean the Response Letter by mail. Def.'s SUMF ¶¶ 9–10; Def.'s Reply at 2.

At the outset, the Court notes that it appears Mr. Bean has improperly attempted to broaden his APA claim through his summary judgment briefing. And unfortunately for Mr. Bean, "[i]t is well-established that a party may not amend its complaint or broaden its claims through summary judgment briefing." *District of Columbia v. Barrie,* 741 F. Supp. 2d 250, 263

8

(D.D.C. 2010); *DSMC, Inc. v. Convera Corp.,* 479 F. Supp. 2d 68, 84 (D.D.C. 2007) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.") (quoting *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996). Although Mr. Bean's complaint alleged that USDA violated the APA by failing to send a mailing, it only disputed receipt of the loan servicing application, form FSA-2510, and was silent as to the Response Letter. Am. Compl. ¶ 10. Mr. Bean challenged receipt of the Response Letter for the first time in his opposition to USDA's motion for summary judgment. Pl.'s Opp'n at 4. This alone could be grounds for granting USDA's motion for summary judgment, because Mr. Bean has not raised a genuine dispute of material fact regarding the mailing challenged in the complaint. *See DSMC,* 479 F. Supp. 2d at 84 (rejecting plaintiff's attempt to amend its complaint through its opposition brief to a motion for summary judgment, and granting summary judgment to defendant on the remaining claims).

However, even if Mr. Bean had properly contested receipt of the Response Letter in his complaint, or properly amended his complaint to include such a claim, USDA would still be entitled to summary judgment. The Court first considers whether USDA was required to send the Response Letter. It then addresses the parties' dispute over whether that letter was in fact sent. It concludes that USDA was required to send the Response Letter, but that there is no genuine dispute as to whether it was sent.

### 1. USDA's Compliance with Its Regulations and Handbook Procedures

In the D.C. Circuit an agency action must comply with the agency's governing statutes and regulations, and when an agency action does comply it is very rarely considered to be arbitrary or capricious. *See Cerniglia v. Glickman*, 118 F. Supp. 2d 27, 34–36 (D.D.C. 2000) (holding that USDA did not act arbitrarily and capriciously in sending a notice to the plaintiff

9

because it complied with the relevant regulatory notice requirements); *Bean*, 2017 WL 4005603 at *6; *cf. Friedler v. Gen. Servs. Admin.*, 271 F. Supp. 3d 40, 61 (D.D.C. 2017) ("It is clear beyond cavil that 'an agency is bound by its own regulations' … An agency 'is not free to ignore or violate its regulations while they remain in effect[,]'") (alteration in original) (quoting *Nat'l Envtl. Dev. Ass'n's Clean Air Project v. EPA*, 752 F.3d 999, 1009 (D.C. Cir. 2014)); *Fuller v. Winter*, 538 F. Supp. 2d 179, 186 (D.D.C. 2008). Courts in other jurisdictions have likewise held that administrative decisions made in accordance with applicable statutes and regulations are not arbitrary and capricious. *See, e.g.*, *Kawran Bazar, Inc. v. United States*, 721 F. App'x 7, 9 (2d Cir. 2017) ("A sanction does not violate [the arbitrary and capricious] standard when the agency properly adheres to its own settled policy and guidelines.") (citing *Lawrence v. United States,* 693 F.2d 274, 277 (2d Cir. 1982)); *Grinstead v. United States*, No. 96-16536, 1997 WL 547962, at *1–2 (9th Cir. Sept. 4, 1997) (finding that the Farmers Home Administration ("FmHA") did not act arbitrarily and capriciously in foreclosing a farmer's property and denying further time extensions because the FmHA action was mandated by the statutory guidelines).

An agency is also, in certain circumstances, obligated to follow its own internal procedures, even when such procedures are not set forth in regulations. *See Morton v. Ruiz*, 415 U.S. 199, 232–36 (1974) (finding that the Bureau of Indian Affairs violated the APA when it failed to act in accordance with an internal manual requirement that it publish information regarding eligibility criteria for general welfare assistance). "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures . . . [t]his is so even where the internal procedures are possibly more rigorous than otherwise would be required." *Id.* at 235 (citing *Service v. Dulles*, 354 U.S. 363, 388 (1957)); *see also Teton Historical Aviation Found. v. United States*, 248 F. Supp. 3d 104, 111 (D.D.C. 2017) ("[I]t is settled law that where an internal

agency manual affects the concrete interest of a member of the public, the Court can, and should, require the agency to follow its own procedures by applying the manual itself as a judicially manageable standard."). Accordingly, while USDA claims that Mr. Bean "can point to no regulation that requires the agency to [send the Response Letter]," Def.'s Reply at 2, that argument, even if correct, does not end the Court's analysis.[4]

Here, USDA's internal procedures required that it send a letter summarizing Mr. Bean's reconsideration meeting with Officer Palmer. The 5-FLP Handbook states that "[t]he authorized agency official will send the borrower a letter stating the results of the reconsideration meeting . . . [i]f FSA's decision has not changed, the borrower will be provided with new mediation and appeal rights." 5-FLP Handbook ¶ 231(A). This requirement certainly "affects the concrete interest of a member of the public," because in Mr. Bean's case it provided a final opportunity for relief from a financially devastating outcome—the acceleration of his loan. *See Teton Historical Aviation Found.*, 248 F. Supp. 3d at 111. Accordingly, if USDA did not send the Response Letter to Mr. Bean, it arguably acted in an arbitrary and capricious manner by failing to follow its own procedures impacting the rights of individuals. *See Morton*, 415 U.S. at 235.

## 2. USDA's Transmission of the Response Letter

USDA's failure to send the Response Letter would likely have been arbitrary and capricious, but the record indicates that USDA sent the letter. USDA has provided Mr. Palmer's declaration that he sent the Response Letter by certified and First Class regular mail, and it has

---

[4] And USDA is arguably incorrect regarding its governing regulations, because Section 780 requires USDA to provide notice of (1) its decision upon reconsideration and (2) the borrower's additional rights to mediation and appeal of that decision. 7 C.F.R. §§ 780.7(f), 780.15(a); *see also* 7 C.F.R. § 766, subpt. C, apps. A–C.

provided an image of the Response Letter envelope with handwriting indicating that the letter was sent. *See* Palmer Decl. ¶ 9; Def.'s Mot. Ex. 5. On the other hand, Mr. Bean denies receiving the Letter, Bean Decl. ¶ 3, and claims that this denial raises a genuine dispute of material fact warranting the denial of summary judgment. Pl.'s Opp'n at 4–5. The Court disagrees.

As an initial matter, Mr. Bean contends that the "mailbox rule" should govern the Court's analysis, and that under the mailbox rule his declaration has rebutted any presumption that he received the Response Letter. Pl.'s Opp'n at 5. According to the mailbox rule, "proof that a letter has been properly addressed, stamped, and deposited in the mail gives rise to a rebuttable presumption that the letter was delivered in a timely fashion to its intended recipient." *Bradshaw v. Vilsack*, 102 F. Supp. 3d 327, 331 n.5 (D.D.C. 2015) (quoting *Duckworth v. U.S. ex rel. Locke,* 705 F. Supp. 2d 30, 42 (D.D.C. 2010)). However, the presumption of receipt in a particular case may be rebutted by "sworn testimony or other admissible evidence." *Hammel v. Marsh USA Inc.*, 79 F. Supp. 3d 234, 243 (D.D.C. 2015). On the other hand, "some courts have concluded that a mere denial of receipt is insufficient to rebut the presumption accorded the sender under the mailbox rule." *Lepre v. Dep't of Labor*, 275 F.3d 59, 70 (D.C. Cir. 2001) (citing *Mahon v. Credit Bureau of Placer Cty. Inc.*, 171 F.3d 1197, 1202 (9th Cir. 1999); *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997)).

As the relevant USDA provisions make clear, however, the relevant question here is not whether Mr. Bean *received* the Response Letter, but whether USDA *issued* that letter. Section 766's Notices require USDA to "notif[y] [borrowers] and provid[e] 30 days to request mediation, negotiation, or appeal" after a reconsideration request. 7 C.F.R. § 766. And Section 780 states that "[t]he official decision on reconsideration will be the decision letter that is *issued*." 7 C.F.R.

12

§ 780.7(f) (emphasis added). Finally, according to the 5-FLP Handbook, USDA "will *send* the borrower a letter stating the results of the reconsideration meeting." 5-FLP Handbook ¶ 231(A).

None of these provisions on their face require receipt of the notice, suggesting that USDA's compliance with its policies hinges on whether it sent the Response Letter, not on whether the letter was received. *See, e.g.*, *Public Citizen, Inc. v. Rubber Mfrs. Ass'n*, 533 F.3d 810, 818 (D.C. Cir. 2008) (noting that a court need not look past a statute's text when the statute's "language is plain on its face"). Therefore, while the mailbox rule may be relevant to the Court's analysis, it does not necessarily govern that analysis because the mailbox rule concerns the receipt of a letter, not its mailing. *See Maggio v. Wis. Ave. Psychiatric Ctr., Inc.*, 987 F. Supp. 2d 38, 41 (D.D.C. 2013) ("[T]he mailbox rule functions as a presumption of receipt, and only comes into play when there is a material question as to whether the document was *actually received*") (emphasis added), *aff'd*, 795 F.3d 57 (D.C. Cir. 2015).

The Fifth Circuit's opinion in *Custer v. Murphy Oil USA, Inc.* is particularly instructive, because it involved a similar summary judgment dispute over whether a notice was mailed. 503 F.3d 415 (5th Cir. 2007). In that case, the plaintiff claimed that he did not receive a notice containing updates to his employee benefit plan, and therefore that there was a material dispute of fact regarding whether his employer violated statutory reporting and disclosure requirements. *Id.* at 417. The plaintiff argued that because the fact of receipt was in dispute, the court should apply the mailbox rule, which would allow him to rebut the "presumption that [a properly and timely mailed] document has been received." *Id.* at 419 (internal quotation marks omitted). The court, however, chose not to directly apply the mailbox rule because the Department of Labor's regulations interpreting the relevant statutory requirements focused on whether the notice was

13

*sent* via reasonable means and not on whether it was actually received.[5] *Id.* The court instead referenced the mailbox rule as an evidentiary guidepost to determine whether there was a genuine dispute as to the fact of mailing:

> [W]e refuse to fully adopt [the] "inverse mailbox rule" in this setting, such that a plaintiff's bare assertion of non-receipt could create a genuine issue of material fact to survive summary judgment. To do so would essentially require proof of receipt on the employer's part where the regulations only require proof of mailing. But while proof of receipt is unnecessary, we cannot forget that proof of mailing is still required.

*Id.* at 421. The court held that there was a genuine dispute of fact as to whether the notice was mailed because the employer did not provide any physical evidence of mailing, such as "business records, a signed receipt from certified mail, or a post-marked envelope," and there was additional circumstantial evidence of non-receipt. *Id.* at 419–20.

Here, USDA has provided both physical and testimonial evidence that it mailed the Response Letter. USDA's physical evidence consists of (1) a copy of the Response Letter's certified mailing envelope, sent on June 27, 2014 and returned on July 17, 2014; (2) handwriting on the same envelope which indicates that the letter was re-sent by First Class regular mail on July 17; and (3) a copy of the Response Letter dated June 27, 2014 and marked with a mailing number corresponding to the number on the certified mailing envelope. Def.'s Mot. Ex. 5. USDA also submitted written testimony by Officer Palmer, who stated that he sent the Response Letter by certified mail on June 27, and upon its return on July 17 immediately re-sent the letter by First Class regular mail. Palmer Decl. ¶ 9. Mr. Bean has not provided more than a bare

---

[5] Although the regulation at issue required that "the plan administrator shall use measures reasonably calculated to ensure actual receipt of the material," 29 C.F.R. § 2520.104b-1(b)(1), the Fifth Circuit focused on whether the employer sent notices via "reasonably calculated measures" to make receipt likely, rather than on whether the employer confirmed receipt. *Custer*, 503 F.3d at 419.

assertion of non-receipt, and there is no circumstantial evidence indicating that the agency failed to send the Response Letter.[6] Pl.'s Opp'n at 2. His assertion is not sufficient to raise a genuine dispute of fact regarding whether USDA sent the Response Letter.[7]

---

[6] Mr. Bean also states that he received daily chemotherapy treatments in June 2014, and he suggests that those treatments may have impacted his receipt of the Response Letter even though he "regularly check[ed]" his mail. Bean Decl. ¶¶ 1–3. However, the record shows that the Response Letter was re-sent in July 2014, a month after the medical treatment Mr. Bean identified. Palmer Decl. ¶ 9; Def.'s Mot. Ex. 5.

[7] The Court also notes that by re-sending the Response Letter via First Class mail, USDA met the Due Process requirement to provide "notice reasonably calculated . . . to apprise interested parties" of proceedings impacting their rights. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Winton v. Nat'l Transp. Safety Bd.*, 358 F. App'x 183, 184 (D.C. Cir. 2009) ("Agency notice satisfies both the Administrative Procedure Act … and the Due Process Clause if it gives interested parties notice of the facts and law to be asserted in such time as to afford them a reasonable opportunity to respond."). Under this standard, "[a]ctual notice is not required, but reasonable efforts to achieve it are." *Brown v. District of Columbia*, 115 F. Supp. 3d 56, 68 (D.D.C. 2015) (citing *Dusenbery v. United States,* 534 U.S. 161, 168 (2002)). And "the Supreme Court has repeatedly upheld the use of first class mail as a method of notice 'reasonably calculated . . . to apprise interested parties' of proceedings affecting their rights in a variety of contexts." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 484 (1988)).

## IV.  CONCLUSION

As explained above, there is no genuine dispute of fact regarding whether USDA sent the Response Letter, and the parties do not otherwise dispute that USDA complied with all relevant regulations and internal procedures.  *See* 7 C.F.R. §§ 766, subpt. C, apps. A–C, 780.15(a); 5-FLP Handbook ¶ 231(A).  As a matter of law, therefore, the Court has no basis to hold that USDA acted in an arbitrary and capricious manner.  *See Cerniglia*, 118 F. Supp. 2d at 34–36.  Accordingly, Defendant's Motion for Summary Judgment (ECF No. 26) is **GRANTED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 27, 2018                                                                              RUDOLPH CONTRERAS
                                                                                                                  United States District Judge